**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RUSSELL LEE PARKER, JR.,

    Petitioner,

vs.                                  Case No.   3:08-cv-774-J-32TEM
                                                         3:04-cr-244-J-32HTS

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

This case is before the Court on petitioner Russell Lee Parker's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and Supplements in Support (Docs. 1, 4, 5) and the government's Response. (Doc. 13.) Petitioner has also filed a reply (Doc. 14), which the Court has considered.[1] Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the instant petition.

**I. Background**

On September 8, 2004, a grand jury returned a sixteen count indictment against Russell Lee Parker, Jr. (petitioner) and one co-defendant, Dale A. Beardsley.

---

[1] Although the Magistrate Judge granted the government's motion to strike the reply, (Doc. 16), the Court has decided to permit its filing and has considered it. Petitioner's motion to strike the government's response (Doc. 19) is denied.

Beardsley entered into a plea agreement with the government (Crim. Doc. 98)[2] and petitioner proceeded to trial in May 2005. That trial ended in a mistrial when the jury could not agree on a verdict. On June 17, 2005, petitioner's case was transferred to the undersigned for retrial. (Crim. Doc. 165.) The government superseded the indictment against petitioner on July 7, 2005 (Crim. Doc. 176), and then again on September 7, 2005. (Crim. Doc. 249.) The second superseding indictment contained twenty counts. (Id.) Count One alleged a conspiracy pursuant to 18 U.S.C. § 371. (Id.) Counts Two through Ten alleged mail fraud, 18 U.S.C. § 1341, and Counts Eleven through Twenty alleged wire fraud, 18 U.S.C. § 1343. (Id.)

From October 11 through October 24, 2005, the undersigned held petitioner's second trial. On October 24, 2005, the jury found petitioner guilty on all counts alleged in the second superseding indictment. (Crim. Doc. 317.) On May 12, 2006, petitioner filed a Motion for New Trial Based on Newly Discovered Evidence (Crim. Doc. 372), which was opposed by the government. (Crim. Doc. 374.) The Court held two hearings on petitioner's motion before denying it in a written order on June 5, 2006. (Crim. Doc. 383.) On July 18, 2006, the Court sentenced petitioner to 156 months imprisonment. (Crim. Doc. 393.)

Petitioner filed a timely notice of appeal, raising three issues: (1) whether the

---

[2] Citations to Parker's criminal case file, 3:04-cr-244-J-32TEM, are denoted as "Crim. Doc. ___." Citations to Parker's civil § 2255 case file, 3:08-cv-774-J-32TEM, are denoted as "Doc. ___."

evidence was sufficient to sustain his conviction; (2) whether the Court erred in denying his motion for new trial based on false testimony by a government witness; and (3) whether cumulative errors by the prosecutor and the Court rendered the trial fundamentally unfair. (Doc. 13-1.) On June 11, 2007, the Eleventh Circuit affirmed petitioner's conviction in an unpublished, per curiam opinion, stating that "[a]fter reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we conclude that there is no merit to any of the arguments Parker makes in this appeal." (Crim. Doc. 460.) Petitioner did not request certiorari from the United States Supreme Court.

On August 4, 2008, petitioner timely filed his § 2255 motion. He raises four arguments: (1) "Trial counsel was ineffective in assisting Parker to wit: Trial counsel's performance prejudiced Parker resulting in an unreliable and fundamentally unfair outcome of the proceedings, and trial counsel's performance fell below an objective standard of reasonableness;" (2) "Trial counsel was ineffective as counsel when he failed to identify and act on the Prosecution's blatant violation of Parker's Brady rights;"(3) "Parker was denied a fair trial as a result of the cumulative effect of error attributed to trial counsel's ineffective assistance of counsel and Prosecutor error;" and (4) "Newly discovered evidence will prove that trial testimony was perjured and that Parker is innocent of all charges."

## II. Legal Standard

Title 28, United States Code, Section 2255, allows attack on a sentence on only four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentence was imposed without jurisdiction; (3) the sentence was imposed in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. Only jurisdictional claims, constitutional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice warrant relief on collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

An allegation of ineffective assistance of counsel must normally be raised by collateral attack. Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). To establish an ineffective assistance of counsel claim a defendant must demonstrate: (1) "that counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984); and (2) that the defendant was prejudiced by the deficiencies in counsel's performance. Id. at 691-92. Judicial scrutiny of counsel's performance must be highly deferential. Id. at 689. The proper assessment of attorney performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. A court must afford a strong presumption that a counsel's conduct falls

4

within the wide range of reasonable professional assistance; a defendant must overcome the presumption that, under the particular circumstances, the challenged action might be considered sound trial strategy. Id. (citation omitted). Moreover, a court need not address the adequacy of counsel's performance where the defendant has failed to show sufficient prejudice. Strickland, 466 U.S. at 697; Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001). To satisfy the prejudice prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

## III. Discussion

Petitioner's motion is without merit. In reaching that conclusion, the Court relies heavily on its personal knowledge and recollection of this complex and lengthy trial. See Broadwater v. United States, 292 F.3d 1302, 1304 (11th Cir. 2002). In addition, the Court has reviewed petitioner's filings in support of his § 2255 motion along with much of the trial record. A few preliminary remarks are necessary to put petitioner's claims in their proper context.

At trial, the government proved that petitioner participated in a fraudulent real estate scheme. The gravamen of the government's case involved the fraudulent methods petitioner used to broker and close numerous real estate transactions. These methods included forging signatures on closing documents, misstating the

5

source and existence of down payments, and misleading both the lenders and the buyers/investors as to the true value of the properties.

While petitioner raises four separate claims in his motion, a common thread unites his arguments. Essentially, petitioner asserts that the collapse of the sub-prime loan market supports his theory of the case and absolves him of criminal responsibility. According to petitioner, recent events show "that People's Choice Home Loan [the lender], through numerous employees and its loan origination practices, acted to foster and control a culture of fraudulent practices in their loan origination process and their Liar Loan Products and that People's Choice established the conditions and standards by which Parker acted." (Doc. 1 at 62.)

Unfortunately for petitioner, these arguments were presented at trial by his lawyer and rejected by the jury. While the record in this case is voluminous, an examination of petitioner's counsel's closing argument proves this point:

> So did People's Choice create an atmosphere under which everyone operated? Absolutely. We know that now. It was called no source, no seasoning. And it wasn't just People's Choice. It was all the lenders in the subprime market.
> She said, We wanted to make it easier to loan. We wanted our front line not to be worried about this stuff, so we took those requirements down.
> Why is that important? Because the judge is going to tell you that if they're declaring that they were defrauded by misrepresentation, the misrepresentation must be material, material, material. It means it had to be important.
> She can't just say it's important. Prove it's important. . . . .
> You know why they didn't show it to you? Because they can't. Because they know. She knew. She didn't want to sit in that chair. She

> wants to sit in that chair. It's easier to say, Oh, we were defrauded.
> Well, let's take a look at what the rest of the evidence showed about that culture of dishonesty.

(Crim. Doc. 429 at 75-76.)

Regardless of whether it is framed in light of Brady, the Sixth Amendment, or newly discovered evidence, the Court's conclusion is the same; the information now proffered by petitioner would not have made a difference at trial. Petitioner's theory of the case was that any misrepresentations he may have made were not material because the lending standards of People's Choice were so loose that the lender, in effect, invited the misrepresentations. However, the jury rejected that theory and found that petitioner had defrauded the lender. Morever, even if it later turned out that People's Choice and its ilk engaged in reckless lending or worse (as shown by the collapse of the sub-prime market), petitioner's argument misses the mark because petitioner's own conduct vis-a-vis the lenders, as found by the jury, was still fraudulent.

Petitioner also makes specific charges and claims related to the conduct of his counsel and evidence that he says should have been presented at trial. Initially, the Court finds that petitioner received excellent representation from his lawyer before, during and after both trials in this case. Nevertheless, the Court will make specific

findings as to each of petitioner's claims to aid appellate review of this Order.[3] However, petitioner's motion is due to be denied independently of those findings because his arguments are solely concerned with evidence as to the relationship between petitioner and the lender. These arguments ignore that the jury also specifically found that petitioner defrauded the borrowers/investors. (Crim. Doc. 317.) That finding is an independent reason to sustain his conviction.

### a. Counsel's failure to investigate

Petitioner claims that his lawyer was constitutionally ineffective by failing to adequately investigate People's Choice Home Loan and secure the FBI's 302 witness report forms prior to trial. "[T]here is no absolute duty to investigate particular facts or a certain line of defense, although a complete failure to investigate may constitute deficient performance of counsel in certain circumstances." See Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001). Petitioner essentially takes a few snippets from the trial in an effort to show that his lawyer failed to effectively investigate petitioner's case. However, the record as a whole establishes that petitioner's claims have no merit. It is not clear exactly what information petitioner alleges his lawyer should have uncovered about People's Choice. Contrary to petitioner's assertion, his lawyer did

---

[3] Petitioner has moved the Court to amend his motion with more "new evidence" and additional claims. (Doc. 18.) The Court has reviewed his motion and finds that the "new evidence" is cumulative of that already presented in this motion and none of the items petitioner sets forth provide him with any basis for relief. Thus, this motion is denied.

8

in fact move to continue the trial based on SEC information concerning People's Choice (Crim. Doc. 289) and sought to utilize that information at trial to cross-examine the lender's representative on its underwriting guidelines. (Crim. Docs. 423 at 5-19; 442 at 6.) While the Court did not admit the prospectus as substantive evidence, petitioner was allowed to use it to question Pam Ingalls of People's Choice on those guidelines. (Crim. Doc. 442 at 52.) Further, the subpoenas duces tecum sought by petitioner's lawyer before trial were granted by the Court. (Crim. Doc. 295.) With regard to the FBI's 302 witness reports, the record reflects that petitioner's counsel had copies prior to trial (Crim. Doc. 423 at 23); petitioner's conclusory allegations that those reports were not provided is affirmatively contradicted by the record. In addition, counsel's handling of witness Nikeasha Gibbons cannot be faulted. Finally, any argument that petitioner's lawyer was not prepared to cross-examine the government's witnesses is further weakened because counsel had transcripts of witness testimony from the petitioner's first trial. Petitioner has not shown that his lawyer's investigation was constitutionally deficient or that prejudice resulted from any of counsel's alleged errors; indeed, though the case was complex, petitioner's counsel did a professional job of mounting a defense.[4]

---

[4] Petitioner's argument to the contrary is largely premised on trial excerpts that are robbed of their context. For example, petitioner quotes his lawyer's closing argument in support of his claim that counsel failed to investigate his case. Counsel stated, "This is a unique case, because there was no need to come up with anything other than what the Government already had." (Doc. 14 at 5.) Far from evidencing

9

### b. Counsel's failure to identify and act on Brady evidence

Petitioner claims that his lawyer was constitutionally ineffective by failing "to identify and act on Prosecution's blatant violation of Parker's Brady rights." (Doc. 1 at 41.) Here, petitioner is focused on the government's alleged failure to disclose an FBI investigation of People's Choice and the "National initiative to investigate mortgage fraud targeting the lending institutions." Id. at 49-50.

"'[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.'" See Grossman v. McDonough, 466 F.3d 1325, 1341 (11th Cir. 2006) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). "There is constitutional error, however, only if the suppressed evidence is material; that is, if there is a reasonable probability that disclosure would have produced a different result at trial." See United States v. Perez, 473 F.3d 1147, 1150 (11th Cir. 2006) (citing United States v. Newton, 44 F.3d 913, 918 (11th Cir. 1994)). "[T]he materiality standard for Brady claims is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Banks v. Dretke, 540 U.S. 668, 672 (2005) (quotation omitted).

Petitioner's proffered evidence is insufficient to support his claim that the

---

counsel's lack of investigation or preparation, this statement was most likely made to explain to the jury why petitioner did not elect to present evidence.

government violated Brady because there is little chance that disclosure of the evidence would have led to a different result at trial. Petitioner's claim to the contrary rests on a trail of suppositions that do not hold up when closely examined. Assuming arguendo that People's Choice was under some type of federal investigation at the time of petitioner's trial and facts relating to that investigation were otherwise admissible, petitioner has not shown the relevance of that investigation to the crimes with which he was charged. Potential fraud by others does not provide a legal excuse for petitioner's crimes.

### c. Fair trial

Petitioner claims that he was denied a fair trial "as a result of the cumulative effect of error attributed to trial counsel ineffective assistance of counsel and Prosecutor error." The factual basis of petitioner's claim is not entirely clear. In large part, his submission consists of conclusory statements regarding his entitlement to a new trial. In any event, it appears that the Eleventh Circuit considered and rejected this "cumulative" argument on direct appeal. (Doc. 13-1, 13-2.) Once a claim has been raised and adversely decided on direct appeal, it cannot be re-litigated in a collateral attack under § 2255. United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000). To the extent petitioner attempts to reassert this claim through an attack on his lawyer's effectiveness, his claim is without merit.

### d. New Evidence

Petitioner asserts that "[n]ewly discovered evidence will prove that trial testimony was perjured and that [he] is innocent of all charges." This "newly discovered evidence" consists of the following: (1) the bankruptcy files of People's Choice Home Loan; (2) the FBI investigation; (3) the SEC investigation; and (4) "published reports regarding the sub-prime lender's fraudulent loan origination practices and mortgage securities fraud." (Doc. 1 at 62.) The procedural vehicle underlying this claim is not clear from petitioner's submission; he cites the standard for a new trial but also maintains that the Court need not reference that standard because he is innocent of all charges. Regardless, the Court has reviewed petitioner's submission, along with the trial testimony of Pam Ingalls. (Crim. Docs. 428 at 176-276; 442 at 8-101.) The letters from the FBI and SEC submitted by Petitioner appear to be form letters that are not material to any issue in this case. The other "new" evidence is cumulative, at best, of the evidence presented at trial and does not establish petitioner's innocence. None of petitioner's submissions, whether considered in isolation or combined with all of the other issues he has raised, entitle him to relief from the judgment of conviction.[5] It is hereby

---

[5] The Court has endeavored to address all of the arguments Petitioner made in the hundreds of pages of filings related to his § 2255 motion. To the extent not specifically addressed, all other grounds are also denied.

**ORDERED:**

1. Russell Lee Parker's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.

2. Russell Lee Parker's Motion to Appoint Counsel (Doc. 7) is **DENIED**.

3. Russell Lee Parker's Motion to Strike Response (Doc. 17) is **DENIED**.

4. Russell Lee Parker's Motion to Amend § 2255 Petition (Doc. 18) is **DENIED**.

5. The Clerk is directed to enter judgment for the United States and against Russell Lee Parker, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of August, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jcd.

Copies:

counsel of record, pro se party